**William E. NICHOLS, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. DC 703.**

United States District Court,
N. D. Mississippi,
Delta Division.

June 30, 1972.

Charles C. "Cliff" Finch, D. Briggs Smith, Jr., M. Collins Bailey, Batesville, Miss., Walter Buford, Memphis, Tenn., for plaintiff.

Jack F. Dunbar, of Dunbar & Merkel, Clarksdale, Miss., Jerome B. Steen, of Wise, Carter, Child, Steen & Caraway, Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the Court without a jury at the United States Courthouse in Clarksdale, Mississippi on March 10, 1972. At the conclusion of the trial the Court requested memoranda of authorities from the parties. The memoranda have been received and the Court has considered them along with the entire record and the evidence introduced at the hearing. The action is now ripe for decision.

Plaintiff, W. E. Nichols (Nichols), and his wife reside in the Cedar View community in DeSoto County, Mississippi. Cedar View is situated on a gravel road west of the two lane paved state highway known as State Highway No. 305. The gravel road intersects Highway No. 305 at or near the crest of a hill. The highway runs north and south. The gravel road runs east and west. On the evening of April 9, 1966, Nichols and his wife left their home to go to a church located on Highway No. 305, south of the intersection above mentioned. Nichols was driving the automobile. Nichols turned into the highway at the intersection and drove south toward the church. After Nichols traveled a distance of about one hundred feet an automobile owned by Morris Laughter (Laughter), and driven by William G. Marr, Jr. (Marr), ran into the back of his automobile. Nichols and his wife received painful, extensive and permanent injuries. Nichols suffered a broken bone in his right leg and broken ribs in the rib cage. His chest was otherwise bruised and crushed. Mrs. Nichols suffered a fracture of the left wrist. The fracture involved the large bone in the forearm at the base of thumb, also a small fracture of the other bone in the arm. Mrs. Nichols also suffered severe lacerations of her right face, scalp, ear, left forehead and the nose and eyelids region.

Mr. and Mrs. Nichols were carried by ambulance to the Baptist Hospital in Memphis, Tennessee where they received medical attention from physicians and surgeons on the hospital staff.

In the afternoon before the collision Laughter and Marr visited restaurants in the neighborhood and each drank several cans of beer. On leaving, Marr thought that Laughter was too drunk to drive and offered to drive Laughter's automobile to the place where they were going. Laughter consented and they left the restaurant with Marr driving the automobile.

Marr drove the automobile south on highway No. 305. As he proceeded up the incline of the hill, just mentioned, he passed an automobile driven by David Yon, Jr. (Yon) which was proceeding in the same direction. Yon saw the accident, and, in the trial of Mrs. Nichols' case in the State Court, hereinafter mentioned, Yon testified that Marr passed him about one hundred yards from the crest of the hill, driving at a rate of speed in excess of seventy miles per hour, and drove over the crest of the hill into the rear of the Nichols automobile. Yon stated that the Nichols car was plainly visible and that the rear lights thereon were burning. Marr contended that the rear lights to the Nichols automobile were not burning and that he came upon the automobile suddenly, when the automobile appeared to be only a black spot in the road ahead of him.

Laughter carried liability insurance with United States Fidelity and Guaranty Company (USF&G). The policy limits were $5,000.00 for injuries to a single individual, and $10,000.00 for injuries suffered by all individuals in a single accident. Marr owned an automobile which was not involved in the accident. Marr carried liability insurance with State Farm Mutual Automobile Insurance Company (State Farm), the limits of which were $10,000.00 for injuries suffered by one individual in an accident and $20,000.00 for injuries suffered by

all individuals in a single accident. Thus, USF&G had the primary coverage and State Farm had the secondary coverage. The policies afforded protection for both insureds in the sum of $15,000.-00 each for Nichols and his wife.

USF&G employed attorneys to represent Laughter and Marr. State Farm employed attorneys to represent Marr. Mr. and Mrs. Nichols employed attorneys to represent them, and suits were promptly filed in the Circuit Court of DeSoto County, Mississippi.

The suits were filed on June 10, 1966 and answers were filed by Laughter and Marr on August 31, 1966. In answering the suits, attorneys for Laughter and Marr asserted the affirmative defense of contributory negligence on the part of Nichols, setting forth that Nichols entered the highway from the side road at a time when he could not do so with safety and that the rear lights of his automobile were not burning. Before the suits reached the trial stage efforts were made by attorneys for Nichols and his wife to settle the cases. USF&G offered to pay the full policy limits, and State Farm offered each plaintiff the sum of $4,000.00. Later State Farm made a tentative offer of $4,500.00 to each plaintiff. On January 23, 1967 attorneys for Nichols and his wife wrote attorneys for Laughter and Marr that they would settle the claims of Nichols and his wife for a sum equal to the total coverage of both policies. At that time medical depositions had been taken and the cases were ready for trial. Attorneys for plaintiffs described in detail the injuries suffered by their clients, the medical and hospital expenses incurred and to be incurred by them, and commented on the apparent liability of Laughter and Marr for the accident. In response to this demand, the attorney for State Farm wrote attorneys for Mr. and Mrs. Nichols, on January 26, 1967, that State Farm would add $9,750.00 to the offer of USF&G.

This offer was not accepted. Attorneys for Mr. and Mrs. Nichols wrote attorneys for Laughter and Marr, on January 30, 1970, and offered to settle the cases for $40,000.00 or for the combined coverage, less $250.00 if such a sum was a lesser amount. No other settlement offers were made. There was not an offer made at any time to settle either claim separate and apart from the other.

Mrs. Nichols' case was tried in February 1967. She obtained a jury verdict of $6,250.00. On the trial the Court granted Laughter and Marr an instruction to the jury to the effect that Nichols' contributory negligence, if any, might, under certain circumstances, be imputed to Mrs. Nichols.

The Trial Court, on March 3, 1967, sustained a motion by Mrs. Nichols' attorneys for a new trial on the issue of damages alone. From the entry of that order Laughter and Marr perfected an appeal to the Mississippi Supreme Court. The Supreme Court affirmed and remanded the case on direct appeal and reversed and remanded on cross-appeal,[1] sending the case back to the Trial Court for a new trial on the issue of damages alone. The Supreme Court held that trial record did not contain substantial evidence that Nichols was guilty of any negligence which contributed to the accident, but, in any event, there was no evidence that a joint venture existed between Nichols and his wife. The Court held, therefore, that the Trial Court erred in granting the joint venture instruction.

Mrs. Nichols' case was decided by the Supreme Court on April 1, 1968. While the case was pending on appeal Nichols' case was tried and, on February 17, 1968, Nichols obtained a judgment against Laughter and Marr for the sum of $32,500.00. An appeal was noted, but was not perfected.

After the Supreme Court reversed Mrs. Nichols' case, USF&G and State Farm settled her claim for the policy limits, or $15,000.00. USF&G and State

1. Marr v. Nichols, Miss., 208 So.2d 770, 772 and 773 (1968).

Farm also offered to pay the same amount to Nichols to settle the judgment for $32,500.00. Nichols refused the offer. USF&G and State Farm thereupon paid the money into Court to apply on the judgment.

On January 1, 1970 Nichols filed the action sub judice. Nichols brought suit against both insurance carriers, USF&G and State Farm, alleging bad faith on the part of each for its failure to settle the cases before trial. Nichols sought to recover from USF&G and State Farm the sum of $17,500.00, the excess of the judgment over policy limits.

The Court dismissed the complaint on October 29, 1970 on the grounds that Nichols was not a party to the insurance contracts, and, therefore, did not have standing to sue, and, that Nichols was not damaged by the failure of USF&G and State Farm to accept his offer of settlement because he actually received the policy limits.

The order of dismissal granted leave to amend. Plaintiff filed an amended complaint on November 30, 1970. The amended complaint did not allege any new or additional facts to support Nichols' case against USF&G. As to State Farm, plaintiff attached to the amended complaint a copy of an assignment which he had obtained from Marr, subsequent to the order of dismissal, which purported to assign to Nichols the claim, if any, of Marr against State Farm for failure to settle with Nichols prior to the trial in the State Court. The motion of USF&G was sustained, and USF&G dismissed from the action.

State Farm filed a motion to dismiss on the ground that the assignment showed on its face that Marr had been released from the judgment by Nichols for which reason he had nothing to assign Nichols. The motion was overruled.

The evidence submitted to the Court is without substantial dispute. State Farm and USF&G employed competent attorneys to represent Marr. The attorneys rendered prompt, faithful and capable services in defending the suits. It is also shown, without conflict, that State Farm properly and thoroughly investigated the accident and adequately developed all material facts in regard thereto. The evidence shows that State Farm was fully informed of the injuries suffered by Mr. and Mrs. Nichols. State Farm came to the conclusion that the injuries of Mrs. Nichols were as severe as those suffered by Mr. Nichols. This was not an unreasonable conclusion for State Farm to make, in view of the evidence in the case. At all times during the legal proceedings Marr was fully advised and informed of the progress of the suits by the attorneys employed by USF&G and State Farm. By written letters from both USF&G and State Farm and through consultation with the attorneys employed by them, Marr was advised of the possibility of a judgment in excess of his combined policy limits and was advised that he could seek independent counsel at his own expense to assist in the defense of the suits. All offers and counteroffers of settlement were transmitted to Marr by the attorneys. The evidence shows that he was in full accord with the manner in which the attorneys were handling settlement negotiations and defense of the suits. Marr agreed that the amounts offered to settle the claims were reasonable and did not at any time request that the suits be settled within policy limits.

The Court finds no evidence that State Farm acted in bad faith or fraudulently toward Marr. State Farm acted upon the advice of competent counsel. The results of the lawsuit were not predictable. The mere fact that a judgment was rendered in excess of policy limits does not, in itself, under the laws of this jurisdiction, make State Farm liable for the excess over policy limits, simply because it failed to settle within the limits prior to trial.

The USF&G policy and Marr's policy with State Farm provided a coverage of $15,000.00 against the claim of Nichols. Mrs. Nichols' suit was tried first and resulted in the verdict of $6,250.00.

Since, in the judgment of State Farm, Mrs. Nichols' injuries were as serious as those suffered by her husband, and she was not the driver of the automobile, it was reasonable for State Farm to assume that the combined coverage of the policies would be sufficient to pay any judgment which might be obtained by Nichols against Marr. It must be remembered, also, that State Farm did not, at any time, have the opportunity of settling the claim of Nichols within its policy limits after the trial of Mrs. Nichols' case.

The Court cannot find from the evidence that State Farm acted unreasonably, or arbitrarily, or in bad faith and in disregard of Marr's interests by failing to accept the offer of settlement made by Mr. and Mrs. Nichols before the trial of Mrs. Nichols' case in the State Court.

Furthermore, the law does not require an insurer to consider only or exclusively the interest of its insured. The interest of both insured and insurer should be considered and the interest of both fairly balanced. The Court finds that State Farm did reasonably and fairly balance the interest of Marr with its own.

The prevailing rule of law in Mississippi requires that the insurer deal with its insured in good faith considering not only its interest, but also the interest of the insured, and in balancing the interest of both, to deal with the insured fairly under all the circumstances. To be responsible for an excess judgment the conduct of the insurer must amount to an arbitrary disregard for the insured's interest and be tantamount to fraud.[2] The Court does not find from all the evidence that the conduct of State Farm amounted to an arbitrary disregard of Marr's interest, or that such conduct was tantamount to fraud. The Court concludes that the complaint must be dismissed on the merits.

There are other reasons which support the Court's decision. The instrument of assignment by which Nichols obtained the rights of Marr, if any, against State Farm is a questionable instrument inasmuch as it appears on its face that Marr had previously been released by Nichols as a condition of the assignment. If Marr had previously been released by Nichols of any further claim on the judgment, then he would be in no way damaged, consequently he would have no

---

2. Farmers Gin Co. v. St. Paul Mercury Indemnity Co., 186 Miss. 747, 191 So. 415 (1939); Martin v. Travelers Indemnity Company, 450 F.2d 542 (5th Cir. 1971). In *Martin* at 551, the court said: "One of the most crucial of the insurer's obligations is its duty to evaluate any settlement offers from the joint perspective of its own interests and those of its insured. Many courts have defined the degree of consideration owed by the insurer to the insured's interests as one of 'good faith.' J. Appleman, Insurance Law and Practice § 4711 (Supp.1971). Mississippi, however, still adheres to a far less stringent requirement, one laid down many years ago: an insurer cannot be found liable in excess of its policy limits for failing to settle an action unless its refusal to settle was so arbitrary and unreasonable as to constitute fraud. Farmers Gin Co. v. St. Paul Mercury Indemnity Co., 186 Miss. 747, 191 So. 415 (1939). Ordinarily, application of the standard presents a question of fact, and the finder of fact must decide whether the insurer properly considered the interests of the insured in refusing an offer of settlement. For example, when the policy limit is $10,000 and the claimant, having sued for $100,000 offers to settle for $10,000, the insured would benefit handsomely by such a settlement. It would preclude a possible judgment against the insured in excess of policy limits. At the same time, the insurer would wish to reject the offer, since its defense might be successful at trial; and even if it failed at trial, the insurer would risk only the added cost of a litigated defense. [citation omitted] If on these facts the insurance company refused settlement, the trier of fact would decide whether the possible gain to the insurance company was so unlikely and so insignificant relative to the magnitude and likelihood of detriment to the insured that the insurer was acting arbitrarily and unreasonably with regard to the insured's interest."

right of action against State Farm to assign. Additionally, Marr also had given instruments of release to State Farm prior to the assignment, acknowledging the propriety of the manner in which the suits had been defended and releasing State Farm of any further obligations under its policy of insurance. While a consideration of these documents may be questionable, still they are persuasive and fortify the Court's belief from the evidence in this case that Marr was in no way mistreated by State Farm.

In sum, the Court holds that the plaintiff is not entitled to recover from State Farm any sum whatever.